**Frank OROBONO, Plaintiff,**

v.

**Delores KOCH, Michelle Koch, John Reilly, Esq., Defendants.**

**Civ. No. 97–6818.**

United States District Court,
E.D. Pennsylvania.

Sept. 22, 1998.

---

Stephen R. Bolden, Fell & Spalding, Philadelphia, PA, for Frank M. Orobono, Plaintiff.

Robert C. Keller, Robert C. Keller and Associates, Upper Darby, PA, for Delores Koch, Michelle Koch, Defendants.

Andrew J. Bellwoar, Media, PA, Jennifer L. Holsten, Thomas C. Gallagher, Holsten and Associates, Media, PA, for John Reilly, Defendant.

## OPINION

POLLAK, District Judge.

In this lawsuit, plaintiff Frank Orobono raises claims under 42 U.S.C. § 1983, alleging that the defendants, Michelle Koch, Delores Koch and Assistant District Attorney Reilly, conspired to violate his constitutional and civil rights. Complaint at ¶ 25. Currently before the court is defendant Reilly's Motion to Dismiss Plaintiff's Complaint Pursuant to Rule of Civil Procedure 12. In particular Reilly appears to be invoking Rule 12(b)(6). Reilly's contention is that the complaint fails to state a claim upon which relief can be granted because any civil action against him is barred by absolute prosecutorial immunity.

### I. Facts

The complaint alleges that soon after Orobono stopped at his ex-wife's (defendant Michelle Koch's) residence to pick up his daughter Amy for a visit, defendant Delores Koch, Michelle's mother, called the Upper Chichester police department complaining that Orobono had assaulted her. Complaint at ¶¶ 6–11. Although the police officers on duty initially declined to arrest Orobono because they felt they lacked adequate grounds for doing so, the officers changed their minds and did arrest the plaintiff after Delores Koch signed a private complaint against him. *Id.* at ¶¶ 12–18. This change in police response was allegedly instigated by defendant Reilly—a Delaware County Assistant District Attorney—, who "demanded" that Orobono be arrested. *Id.* at ¶ 16, 26–27. The complaint further alleges that Reilly was somehow connected with either Delores Koch or Michelle Koch, and that he was acting outside the purview of his authority when he "demanded" Orobono's arrest. *Id.* at ¶¶ 20–29.

### II. Legal Analysis

#### A. Standard

The function of a motion under Rule 12(b)(6) is to test the legal sufficiency of the plaintiff's claim. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993); *Wright & Miller, Federal Practice and Procedure: Civil 2d* § 1355 at 294. The Supreme Court has stated that:

> In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988). Thus, this court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994) (citations omitted).

#### B. Absolute Immunity

Reilly argues that any claims against him are barred by absolute prosecutorial immunity. The Supreme Court has addressed the issue of prosecutorial immunity in two principal cases: *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), and *Burns v. Reed,* 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). In *Imbler,* the Court reasoned that the doctrine of absolute immunity fosters a courageous and unbiased prosecutorial office, noting that "if the prosecutor could be made to answer in court each time such a person charged him with wrongdoing, his energy and attention would be diverted from the pressing duty of enforcing the criminal law." *Imbler,* 424 U.S. at 425, 96 S.Ct. 984. In determining the scope of

the activities protected by the immunity, the Court adopted a functional analysis. By doing so, it rejected the notion that the defendant's status alone protects him from prosecution. *Id.* at 430, 96 S.Ct. 984. Thus, the Court held that those activities intimately associated with the prosecutor's function as advocate in the judicial phase of the criminal process are protected by absolute immunity. *Id.* While *Imbler* held that a prosecutor acting as an advocate for the state was absolutely immune, it left open the degree of protection afforded to a prosecutor acting as an investigator or administrator. *Id.* at 430–31, 96 S.Ct. 984.

In addressing the latter issue, the *Burns* Court adopted the same functional analysis as the *Imbler* Court. In particular, the *Burns* Court was required to determine whether absolute immunity protected "(a) respondent's participation in a probable cause hearing, which led to the issuance of a search warrant, and (b) respondent's legal advice to the police regarding the use of hypnosis and the existence of probable cause to arrest petitioner." *Burns,* 500 U.S. at 487, 111 S.Ct. 1934. Because "appearing before a judge and presenting evidence in support of a motion for a search warrant" were viewed by the court as activities which "clearly involve the prosecutor's 'role as advocate for the State,'" the Court held that participation in the probable cause hearing was absolutely protected. *Burns,* 500 U.S. at 491, 111 S.Ct. 1934 (quoting *Imbler,* 424 U.S. at 431 n. 33, 96 S.Ct. 984). On the other hand, the Court concluded that giving legal advice to police officers is not so closely associated with the judicial process as to require the protection of absolute immunity. *Id.* at 495–96, 111 S.Ct. 1934. What emerges from *Burns* is a conceptually clear, but factually somewhat nebulous, differentiation between the sorts of prosecutorial functions that are absolutely protected and those that are not. As the Third Circuit observed in *Kulwicki v. Dawson,* "[t]he line between quasi-judicial and investigative activity is far from clear." 969 F.2d 1454, 1465 (3d Cir.1992). The question raised in the case at bar is what side of that line Reilly's actions fall on.

The Supreme Court recently revisited the doctrine of prosecutorial immunity in *Kalina v. Fletcher,* 522 U.S. 118, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997). In that case, the arrestee, Fletcher, brought a § 1983 suit against the prosecutor, Kalina, based on certain misstatements in the charging documents. *Id.* at ——, 118 S.Ct. at 505. Writing for the Court, Justice Stevens found that Kalina's "activities in connection with the preparation and filing of two of the three charging documents—the information and the motion for an arrest warrant—are protected by absolute immunity." *Id.* at ——, 118 S.Ct. at 509. However, to the extent that the prosecutor was "personally attesting to the truth of the averments in the certification [the third of the charging documents]" *id.,* the Court held that " § 1983 may provide a remedy for respondent insofar as petitioner [Kalina] performed the function of a complaining witness." *Id.* at ——, 118 S.Ct. at 511.

Although predating *Kalina,* the Third Circuit reached a similar conclusion in *Kulwicki,* a case that applies the reasoning of *Imbler* and *Burns.* There the Third Circuit held that

> The decision to initiate a prosecution is at the core of a prosecutor's judicial role. A prosecutor is absolutely immune when making this decision, even where he acts without a good faith belief that any wrongdoing has occurred.

*Kulwicki,* 969 F.2d at 1463–64 (citations omitted). Here, Reilly's "demand" that Orobono be arrested seems to fall within the protected sphere of prosecutorial activity. Plaintiff attempts to distinguish *Kulwicki* on the grounds that directing the police to arrest someone and causing criminal charges to be filed against him are somehow different. This argument fails to persuade. Arresting a suspect is a necessary step in the initiation of a criminal prosecution. As a result, it can hardly be separated from the core functions of a prosecutor.

Although defendant Reilly makes a convincing argument that ordering a suspect's arrest is within the core functions of a prosecutor, that argument alone does not dispose of this motion. One of the allegations in *Kulwicki* was that the defendant manufac-

tured false evidence after he had recused himself from the case. Although the prosecutor did not raise an absolute immunity defense to that particular allegation, the Third Circuit, noting that allegation, stated in dictum that "Dawson had no official control over Kulwicki's prosecution in May 1989, and was thus not acting in his prosecutorial role." *Kulwicki*, 969 F.2d at 1467.

Building on this language, plaintiff Orobono makes a similar allegation. Complaint at ¶ 29 (alleging that "Defendant Reilly was not acting in a prosecutorial capacity, nor was he acting on behalf of the Commonwealth in initiating or conducting a prosecution, but rather, he was acting outside the scope of his position as an Assistant District Attorney."). Plaintiff's bare allegation that defendant Reilly was acting beyond the scope of his authority cannot, taken by itself, suffice to bar the invocation of absolute immunity.[1]

To determine whether the allegation has merit, the parties will be given the opportunity to submit supplemental memoranda.