Joseph Santo's GONCALVES,
Jr., Plaintiff,

v.

Investigator REYNOLDS, Defendant.

No. 00–CV–6583L.

United States District Court,
W.D. New York.

Nov. 15, 2001.

Joseph Santo's Goncalves, Jr., Collins, NY, pro se.

Frank C. Pavia, Boylan, Brown, Code, Vigdor & Wilson, LLP, Rochester, NY, for defendant.

## *DECISION AND ORDER*

LARIMER, Chief Judge.

Plaintiff, Joseph S. Goncalves, appearing *pro se*, commenced this action under 42 U.S.C. § 1983. The complaint asserts a claim under the Fourth Amendment to the United States Constitution against Investigator Reynolds [1], arising out of defendant's preparation and prosecution of a felony complaint against plaintiff in November 1997. Defendant has moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative, for summary judgment under Rule 56. Plaintiff has cross-moved for summary judgment on the issue of liability.

1. Defendant's actual name is Marty E. Reyn-

## FACTS

The underlying facts are largely undisputed. Plaintiff, who is currently an inmate in the Collins Correctional Facility in Collins, New York, was at all times relevant to this action detained at the Yates County (New York) Jail ("the Jail"). Plaintiff's detention followed his arrest on October 28, 1997 by officers of the Yates County Sheriff's Department ("the Sheriff's Department"), for certain felony drug and weapons offenses, as well as several violations of the Vehicle and Traffic Law. On that same date, Judge Danny M. Hibbard of the Penn Yan Village Court ordered plaintiff to be held without bail, based on plaintiff having two previous felony convictions. Defendant's Ex. D.

On November 9, 1997, plaintiff was involved in a fight with Robert Yonge, an inmate at the Jail. Yonge suffered a fractured nose in the fight.

As a result of this altercation, officers of the Sheriff's Department undertook an investigation of what had occurred. They took statements from plaintiff, Yonge, and another inmate, Derrick Hankins, who had witnessed the fight. The officers also took photographs of Yonge and of the scene where the fight took place.

The information that was gathered by these officers was then forwarded to defendant, who is an investigator with the Criminal Investigation Division of the Sheriff's Department. Based on that information, on November 20, 1997, defendant prepared a felony complaint, which he filed with the Penn Yan Village Court, charging plaintiff with one count of Assault in the Second Degree, N.Y. Penal L. § 120.05(7). Defendant's Ex. J. Defendant states that he undertook these actions at the direction of the Yates County District

olds.

Attorney's office. Defendant's Affidavit ¶ 16. On November 24, 1997, defendant also prepared and filed an arrest report for the same assault charge. Defendant's Ex. K.

Following plaintiff's arraignment on November 24, on December 8, 1997, Judge Hibbard ordered plaintiff to be held for Grand Jury, based on Judge Hibbard's finding that reasonable cause existed that plaintiff had committed the offense charged. Defendant's Ex. L.

On January 30, 1998, the assault charge was presented to the Grand Jury, which subsequently issued a "No Bill" terminating the charge. On February 6, 1998, Yates County Court Judge W. Patrick Falvey issued a Sealing Order of No Indictment on the assault charge.

Throughout this time period, plaintiff remained detained at the Jail. Although plaintiff alleges that he was detained on the assault charge, and that the pendency of the assault charge "demolish[ed] the plaintiff's chances of bail on his previous charge[s]" stemming from his October 28 arrest, there is no evidence to suggest that plaintiff would have been freed on bail had it not been for the assault charge, particularly since the order directing that he be held without bail was entered prior to the fight with Yonge.

Plaintiff filed the complaint in this action on November 30, 2000. The complaint asserts a claim of false arrest, based on plaintiff's allegation that he acted in self-defense when he struck Yonge. Plaintiff seeks compensatory and punitive damages totalling five million dollars.

## DISCUSSION

Defendant contends that the complaint must be dismissed on the ground that Reynolds's actions are protected by absolute prosecutorial immunity. Plaintiff responds that this doctrine does not shield defendant from liability because Reynolds is not a district attorney, or even an attorney at all, but a criminal investigator.

It is well established that "in initiating a prosecution ..., the prosecutor is immune from a civil suit for damages under § 1983." *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The purpose of this immunity is to avoid having the prosecutor feel "constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages." *Id.* at 424–25, 96 S.Ct. 984. *See also Day v. Morgenthau,* 909 F.2d 75, 77 (2d Cir.1990), *cert. denied,* 506 U.S. 821, 113 S.Ct. 71, 121 L.Ed.2d 37 (1992); *Schloss v. Bouse,* 876 F.2d 287, 289 (2d Cir.1989); *Lawson v. Abrams,* 863 F.2d 260, 262–63 (2d Cir. 1988); *Taylor v. Kavanagh,* 640 F.2d 450, 452 (2d Cir.1981).

In determining whether absolute or qualified immunity applies to a given situation, the court looks to the function being performed rather than to the office or identity of the defendant. *Hill v. City of New York,* 45 F.3d 653, 660 (2d Cir.1995); *see Buckley v. Fitzsimmons,* 509 U.S. 259, 269, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). For example, state prosecutors are absolutely immune from actions resulting from conduct " 'intimately associated with the judicial phase of the criminal process,' " *Hill,* 45 F.3d at 660–61 (quoting *Imbler,* 424 U.S. at 430, 96 S.Ct. 984), such as initiating a prosecution and presenting a case at trial, *Hill,* 45 F.3d at 661 (citing *Imbler,* 424 U.S. at 430–31, 96 S.Ct. 984; *Buckley,* 509 U.S. at 270, 113 S.Ct. 2606), but are entitled only to qualified immunity when performing investigatory functions normally performed by a detective or police officer. *Buckley,* 509 U.S. at 273, 113 S.Ct. 2606; *Smith v. Garretto,* 147 F.3d 91, 94 (2d Cir.1998); *Ireland v. Tunis,* 113

F.3d 1435, 1445 (6th Cir.), *cert. denied,* 522 U.S. 996, 118 S.Ct. 560, 139 L.Ed.2d 401 (1997).

■ By the same token, a state official who, while acting within the scope of his duties and authority, undertakes acts that are functionally the same as those of a prosecutor, may be protected by absolute immunity from liability for those acts, regardless of the official's job title or position. *See, e.g., Austin Mun. Securities, Inc. v. National Ass'n of Securities Dealers, Inc.,* 757 F.2d 676, 689 (5th Cir.1985) (disciplinary officers of securities association were absolutely immune from liability for prosecutorial acts in deciding which charges to bring against securities firm, and for judicial acts in adjudicating firm's guilt); *D'Agostino v. New York State Liquor Auth.,* 913 F.Supp. 757, 769 (W.D.N.Y.) ("Since [defendant state liquor authority commissioners'] actions in [pursuing administrative charges against plaintiff for alleged liquor law violations] were functionally equivalent to that of a prosecutor, they are absolutely immune in a suit for damages"), *aff'd,* 104 F.3d 351, 1996 WL 547187 (2d Cir.1996).

■ Likewise, an investigator or other nonjudicial officer is entitled to the same absolute immunity enjoyed by a prosecutor for acts that are (1) intimately related to the judicial process and (2) taken at the direction of the prosecutor. In *Hill,* 45 F.3d 653, the Second Circuit held that non-lawyer employees of a district attorney's office "are entitled to the same degree of immunity as [the district attorney] himself for their activities while assisting with the investigation and prosecution" of a case. *Id.* at 660. In reaching that holding, the court reasoned that

> [b]ecause absolute immunity is essential to safeguarding the integrity of the judicial process, it extends to those performing functions closely associated with that

process. This includes not only officials performing discretionary acts of a judicial nature, but also individual employees who assist such an official and who act under that official's direction in performing functions closely tied to the judicial process.

*Id.* (citations omitted). An analysis of the extent to which such employees are entitled to immunity in a given case, the court concluded, "must therefore focus on the question of what degree of immunity [the district attorney] may himself be entitled to for his conduct." *Id. See also Davis v. Grusemeyer,* 996 F.2d 617, 632 (3rd Cir. 1993) (establishing general rule that "investigators for a prosecutor performing investigative work in connection with a criminal prosecution deserve the same absolute immunity as the prosecutor"); *Joseph v. Patterson,* 795 F.2d 549, 555 (6th Cir.1986) (nonjudicial officer is entitled to absolute immunity for ministerial actions intimately related to the judicial process taken pursuant to express direction and control of a prosecutor, but only qualified immunity for action on his own initiative or when he carries out administrative or investigative functions of the prosecutor), *cert. denied,* 481 U.S. 1023, 107 S.Ct. 1910, 95 L.Ed.2d 516 (1987), *abrogated on other grounds sub nom. Kalina v. Fletcher,* 522 U.S. 118, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997).

In the case at bar, there is no dispute concerning what defendant actually did; the only dispute is over whether his actions give rise to absolute immunity. Plaintiff contends that they do not because defendant is not an employee of the District Attorney's office. Plaintiff also asserts that because his claim is for false arrest, rather than malicious prosecution, the actions of defendant at issue here are not intimately related to the judicial process, *i.e.,* to the actual prosecution of plaintiff.

The fact that defendant is not an actual employee of the District Attorney's office, however, is not dispositive. As stated, the test for immunity is a functional one that focuses not on job titles, but on the nature of the actions in question. Although the defendants in *Hill* were employees of the district attorney's office, the Second Circuit did not condition their immunity upon that fact, and to do so would run contrary to the purpose behind the functional test adopted by the Second Circuit and other courts of appeals.

█ I also am not persuaded by plaintiff's argument that defendant is not immune because plaintiff's claim is for false arrest. "The decision to file a criminal complaint and seek issuance of an arrest warrant are quasi-judicial duties involved in 'initiating a prosecution.'" *Joseph*, 795 F.2d at 555. "As such, they are protected under *Imbler*, for 'securing the person of the defendant is part of initiating a prosecution and should be insulated.'" *Ireland*, 113 F.3d at 1446 (quoting *Joseph*, 795 F.2d at 556). *See Ireland*, 113 F.3d at 1447 (prosecutors were "entitled to absolute prosecutorial immunity for deciding to file a criminal complaint against Ireland, authorizing and preparing the complaint, seeking a warrant for her arrest, and . . . presenting the charging documents to the judge. These were advocacy functions intimately associated with the judicial phase of the criminal process").

█ Here, defendant's actions with respect to plaintiff's arrest and the bringing of the assault charge were clearly prosecutorial in nature, and were directly related to the decision to prosecute plaintiff. Although plaintiff's title is that of Investigator, there is no dispute that he did not actually investigate the underlying events

concerning plaintiff's altercation with Yonge. That investigation was undertaken by others, who forwarded their findings to defendant. Based upon those findings, which essentially identified plaintiff as the sole suspect, defendant made the decision to prepare the accusatory instruments. Since the district attorney would be entitled to absolute immunity under these circumstances, defendant is as well. *Hill*, 45 F.3d at 660.

█ Furthermore, even if I were to conclude that defendant is not entitled to absolute immunity, I would find him entitled to qualified immunity. If, as plaintiff contends, defendant was in effect acting as a police officer deciding to arrest plaintiff, "the defending officer need only show 'arguable' probable cause." *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir.2000) (quoting *Lee v. Sandberg*, 136 F.3d 94, 103 (2d Cir.1997)). *See also Robison v. Via*, 821 F.2d 913, 921 (2d Cir.1987) (qualified immunity is warranted if officers of reasonable competence could disagree on whether the probable cause test was met).

That standard is easily met here. The reports received by defendant showed that plaintiff and Yonge had been involved in a fight, that Yonge had suffered a broken nose. In addition, Hankins, an eyewitness, had told the investigating officers that "Joe [Goncalve] and Rob [Yonge] got into a fight and Rob did not start it. He head butted Rob first." Defendant's Ex. G. Thus, the statement of the only eyewitness corroborated Yonge's statement that plaintiff had assaulted him.[2] The fact that the grand jury did not indict plaintiff does not mean that the test for qualified immunity has not been met, or even that a false arrest occurred.

---

**2.** I also note that Judge Hibbard, in his detention order, found that reasonable cause existed to believe that plaintiff had committed the crime charged. Defendant's Ex. J.

Lastly, although defendant does not raise this argument, it should be noted that at the time that these events occurred, plaintiff was already being detained pursuant to the earlier drug, weapon, and vehicular charges, and based upon his prior convictions. There is no evidence to support plaintiff's conclusory allegation that the assault charge "demolished" his chances of being released on bail on those other charges. Since plaintiff would have been in custody anyway, he cannot state a claim for false arrest. *See Ba v. New York City Police Dep't,* No. 99CIV11984, 2001 WL 1098019 (S.D.N.Y. Sept.19, 2001) (where plaintiff was charged with assault and sexual abuse in the same complaint, and detained on both charges, plaintiff could not have sustained a constitutional injury in the nature of false arrest with respect to sexual abuse charge, even if he could establish that he was falsely accused of sexual abuse, since the assault charge was based on ample and undisputed probable cause); *Corbett v. White,* No. 00 C 4661, 2001 WL 1098054 (N.D.Ill. Sept.17, 2001) (since plaintiff was already in custody on vehicular charges when defendant allegedly gave him a copy of criminal assault and battery complaints against him, any claim against defendant arising out of the assault and battery charges would necessarily be a malicious prosecution claim rather than a false arrest claim).

## CONCLUSION

Defendant's motion for summary judgment (Docket Item 7) is granted. Plaintiff's cross-motion for summary judgment (Docket Item 15) is denied, and the complaint is dismissed.

IT IS SO ORDERED.